SO ORDERED: March 03, 2009.



Anthony J. Metz III
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROBERT WRIGHT PORTER ) | CASE NO. 07-07566-AJM-13 |
| WANDA FAYE PORTER ) | |
| ) | |
| Debtors. ) | |
| ) | |
| CITIBANK, N.A. AS TRUSTEE c/o ) | |
| CHASE HOME FINANCE LLC AS ) | |
| SERVICING AGENT     , ) | |
| ) | |
| Plaintiff, ) | Adv. Pro. 08-50172 |
| vs. ) | |
| ) | |
| NATIONAL CITY BANK, ROBERT W. ) | |
| PORTER, AND WANDA F. PORTER, ) | |
| ) | |
| Defendants. ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ENTRY
ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DEFENDANT NATIONAL CITY'S MOTION FOR SUMMARY JUDGMENT**

1

This matter came before the Court on February 20, 2009, for hearing on (1) the Motion for Partial Summary Judgment filed by the Plaintiff, Citibank, N.A. as Trustee c/o Chase Home Finance LLC as servicing agent ("Plaintiff") and (2) the Cross-Motion for Summary Judgment and Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, filed by Defendant National City Bank ("National City").  At the hearing, the Plaintiff appeared by counsel, Mark R. Galliher, and Defendant National City appeared by counsel, Carrie Frantz.

And the Court, having considered the evidence submitted by the parties in support of their motions for summary judgment, as well as the briefs filed and arguments of counsel, now makes its findings of fact and conclusions of law, as follows.

### Findings of Fact

The evidence submitted by the parties establishes the following undisputed facts.

1. The Debtors Robert Wright Porter and Wanda Faye Porter are the owners of a house and lots at 928 N. Rochester, in Indianapolis (the "Real Estate").

2. The Debtors previously granted two mortgages against the Real Estate: (1) a first mortgage to The Money Store (assigned to HomEq) in the original amount of $72,000, recorded June 24, 1998, and (2) a second line of credit mortgage to National City, securing advances up to $55,000, recorded April 24, 2000.

3. In January 2003, the Debtors took out a refinancing loan from the Plaintiff in the amount of $67,500. The proceeds of the Plaintiff's loan, with additional funds provided by the Debtors, were applied to pay in full the first mortgage to HomEq, which then released its mortgage. (The Plaintiff has alleged that

    it also sent National City a request to close its line of credit, signed by the Debtors, along with a check for the full amount then due on National City's line of credit. The Plaintiff's Motion, however, does not seek relief based on this separate factual claim.)

4. The Debtors filed their voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 10, 2007. Because National City's mortgage was recorded earlier than the Plaintiff's mortgage, the Debtor has previously filed a Chapter 13 Plan which proposes to pay National City's as the first mortgage against the Real Estate, and to treat the Plaintiff's claim as fully unsecured. Confirmation of that plan has been deferred pending a ruling in this adversary proceeding as to which of the two competing mortgages is entitled to first priority.

### Conclusions of Law

1. The Parties' cross-motions for summary judgment are made pursuant to Rule 56 of the Federal Rules of Civil Procedure, here by virtue of Bankruptcy rule 7056. Under Rule 56, "judgment . . . shall be rendered forthwith" if this Court finds that the pleadings and evidence "show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *See Dick v. Conseco, Inc.*, 458 F.3d 573 (7th Cir. 2006); *In re Colonial Discount Corp.*, 807 F.2d 594, 596 (7th Cir.1986). The material facts in this case, set forth above, are undisputed. The only question is the legal effect of such facts.

3

2.  The Plaintiff argues that, even though its 2003 refinancing mortgage was recorded after National City's 2000 line of credit mortgage, it is entitled to first priority under the common law doctrine of equitable subrogation. Under that doctrine when a lender pays and discharges a prior mortgage against real estate, the new lender becomes subrogated to, and gains the right to enforce, the prior mortgagee's rights against intervening lienholders, like National City. *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind. 2004); *Matter of Lehman,* 690 N.E.2d 696, 699 (Ind. 1997); *Gibson v. Neu,* 867 N.E.2d 188;(Ind. Ct. App. 2007). Thus, a refinancing lender is permitted to step into the shoes of the mortgagee that it paid off, to the extent of the amount paid, plus interest at the rate contained in the mortgage that was satisfied. *Bank of New York*, 820 N.E.2d at 654.

3.  The new lender will be entitled to equitable subrogation even if it had actual or constructive knowledge of the intervening lien on the property, unless the new lender was "culpably negligent." *Bank of New York*, 820 N.E.2d at 654. The rationale for this rule is that a lender who bargained for a junior mortgage should not receive an unjustified windfall by having its lien move up to first place when the Debtor refinances his existing first mortgage.

4.  In this case, the Plaintiff must be subrogated to the rights of the original first mortgage holder, Money Store/HomEq, to the extent its loan was paid off from the proceeds of the Plaintiff's refinancing loan.

5. The facts are apparently undisputed: the HUD-1 closing statement for the Plaintiff's loan clearly shows the closing agent took the proceeds of the Plaintiff's new loan, $67,500.00, plus additional funds from the Debtors, and disbursed $73,743.05 of those proceeds to "P/O ["pay off"] Mtg # 0000100509272 to Home Eq." This reference number matches the bar code number on the Money Store/HomEq Mortgage, which was duly recorded in 1998, long before NCB made its line of credit loan in 2000. Promptly thereafter, HomEq released its prior mortgage.

6. Based on these undisputed facts, the Court must find that, when it bargained for its line of credit mortgage, National City had constructive notice that Money Store/HomEq held the first mortgage against the Real Estate, securing payment of its $72,000 loan. Thus, National City had no reason to expect anything more than a junior mortgage against the Debtors' house, behind a $72,000 prior mortgage.

7. These facts are indistinguishable from those in *Bank of New York,* in which the Supreme Court, as a matter of summary judgment, found Bank of New York was entitled to equitable subrogation. Thus, as in *Bank of New York*, this Court must rule that the Plaintiff's mortgage represents the first lien against the Real Estate, to the extent of the amounts paid from the Plaintiff's loan towards the debt of the prior lender, $67,500.00, plus interest accruing on that amount and the Plaintiff 's attorney's fees.

8. National City argues, based on the decision in *Bank of America v. Ping*, 879 N.E.2d 665, 671 (Ind. Ct. App. 2008), that because the terms of its

5

line of credit were not fully satisfied, the Plaintiff is impermissibly seeking subrogation to National City's lien rights, in violation of the settled rule that "partial subrogation to a mortgage is not permitted." Unlike Bank of America in *Ping*, however, the Plaintiff is not trying to step into National City's shoes. Rather, the Plaintiff seeks subrogation to the Porters' 1998 mortgage to The Money Store/HomEq, whose mortgage had priority over National City's later line of credit mortgage. As detailed above, there is no question that the Plaintiff's loan went to satisfy Money Store/HomEq's mortgage, and that the mortgage was released based on this payment. Thus, unlike Bank of America in *Ping,* the Plaintiff here is not seeking partial subrogation, without first fully satisfying the lender to which it seeks subrogation.

9. National City alternatively argues that the Plaintiff is not entitled to equitable subrogation because it was culpably negligent in failing to get National City's line of credit released when it refinanced the Porters. Culpable negligence, however, means something more than "mere inadvertence, mistake, or ignorance." *Bank of New York,* 820 N.E.2d at 654. Thus, culpable negligence does not include simple "omissions with no suggestion of malice or trickery." *Id.* at 655. The Court elaborated:

The mere fact that a person seeking subrogation was negligent does not bar him or her from relief where such negligence is as to his or her own interests and *does not affect prejudicially* the interest of the person to whose rights subrogation is sought.

*Id.* (emphasis added)(Citing 83 C.J.S. Subrogation, §13 (2000)).

10. In light of these principles, as illustrated by the ruling in *Bank of New York*, merely failing to address a prior recorded mortgage (like National City's in this case) cannot constitute "culpable negligence," even if the new lender had actual knowledge of the intervening lien.

11. These principles have recently been applied by the Indiana Court of Appeals to facts that are indistinguishable to those in this case. Specifically, in *JPMorgan Chase Bank v. Howell*, 883 N.E.2d 106 (Ind. Ct. App. 2007), a refinancing lender (Equity One) paid off the Debtor's existing first mortgage, and also paid to zero a Bank One home equity line of credit secured by a second mortgage. Equity One apparently did not take all of the steps necessary for Bank One to close the line of credit and release its mortgage. The Debtor later re-borrowed against the Bank One line of credit. Like National City in this case, Bank One argued that Equity One was culpably negligent is failing to take the steps necessary to enable Bank One to close its line of credit. The Court of Appeals, however, rejected this argument, even though Equity One clearly knew about the Bank One mortgage, and had no good reason for sending an incorrect payoff. Citing the Supreme Court's holding in *Nally*, the Court ruled that Equity One's negligence did not constitute *culpable* negligence because, far from being prejudiced, Bank One was benefitted by having its loan paid down. 883 N.E.2d at 112.

12. In this case, likewise, the Court must conclude that the Plaintiff's was not guilty of culpable negligence in allegedly failing to send National City a request to close its line of credit.

13. The Court concludes that there are no genuine issues of material fact and that the Plaintiff, Citibank, N.A. as Trustee c/o Chase Home Finance LLC as servicing agent, is entitled to an entry of summary judgment as a matter of law on its equitable subrogation claim.

## Order and Judgment

Based on the foregoing, the Plaintiff's Motion for Partial Summary Judgment on its equitable subrogation claim is GRANTED and Defendant National City's cross motion for summary judgment on that issue is DENIED.

The Court further ORDERS and DECLARES that the lien of the Plaintiff's mortgage against the Real Estate, securing payment of the Plaintiff's 2003 refinancing loan to the Debtors is entitled to priority over the lien of the line of credit mortgage which the Debtors granted to National City Bank in 2000. The Court does not, by this judgment, address the claim raised by the Plaintiff in its Complaint (but not its summary judgment motion) that National City was contractually bound to release its mortgage. The Court does, however, determine that there is no just reason for delay and that this entry of judgment, although partial, shall constitute a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, applicable herein by virtue of Bankruptcy Rule 7054.

# # #

Distribution:

John L. Day, Jr.
Weltman Weinberg & Reis Co., LPA
525 Vine Street
Suite 800
Cincinnati, Ohio  45202

U.S. Trustee
101 West Ohio Suite 1000
Indianapolis, IN  46204

Robert A. Brothers
Chapter 13 Trustee
151 N Delaware St Ste 1400
Indianapolis, IN 46204

Tom Scott
Tom Scott & Associates
6100 N. Keystone Ave Ste 454
Indianapolis, IN 46220

Jennifer Fitzwater
Mercer Belanger
P.O. Box 44942
Indianapolis, IN  46244-0942

Mark R. Galliher
Doyle Legal Corporation, P.C
M&I Plaza, Suite 2000
135 N. Pennsylvania Street
Indianapolis, Indiana  46204